JUDGE COTE

**12 CIV 3287**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN A. KUEHN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIBANK, N.A., THE STUDENT LOAN CORPORATION, and DISCOVER BANK,<br><br>Defendants. | Civil Action No.<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

  Plaintiff Justin A. Kuehn, by his undersigned counsel, on behalf of himself and all others similarly situated, complaining of defendants Citibank, N.A. ("Citibank"), The Student Loan Corporation ("SLC"), and Discover Bank ("Discover") (Citibank, Student Loan Corp., and Discover are collectively, "Defendants"), alleges upon information and belief, as follows:

## PRELIMINARY STATEMENT

  1. This is an action against Citibank, SLC, and Discover for breach of contract, and violations of New York General Business Law §§ 349 and 350.

  2. Defendants are engaged in a scheme to collect additional interest at the expense of borrowers of student loans. Defendants are deceiving borrowers into believing that their monthly payments have been reduced because of an interest rate reduction, when in fact, the vast majority of the payment reduction is attributable to a reduction in the amount of principal being repaid each month. The end result is an extension of the loans' repayment term causing thousands of dollars in additional interest to be paid by student loan borrowers over the life of their loans.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

5. Plaintiff Justin A. Kuehn ("Plaintiff") is an individual residing in New York, New York. Prior to November 2007, Plaintiff had four separate private student loans – two CitiAssist Graduate loans and two Sallie Mae Grad Excel Unsubsidized loans (the "Private Student Loans"). In or around November 2007, Plaintiff consolidated the Private Student Loans with SLC (the "Consolidated Private Student Loan").

6. Defendant Citibank is a national banking association with its principal executive offices located at 399 Park Avenue, New York, New York, 10022. Citibank is, and was at all relevant times, the servicer of all loans held by SLC, including the Consolidated Private Student Loan Citibank.

7. Defendant SLC is a Delaware corporation with is principal executive offices located at 750 Washington Blvd., Stamford, Connecticut, 06901. On December 31, 2010, SLC was acquired by Discover's parent Discover Financial Services from Citibank. SLC is currently a wholly-owned subsidiary of Discover.

8. Defendant Discover is a Delaware state-charted bank with its principal executive offices located at 12 Read's Way, New Castle, Delaware, 19720.

## BACKGROUND

9.    The Consolidated Private Student loan is a fixed interest rate loan with standard payments. The original balance of the Consolidated Private Student Loan was $99,148.19 with an annual interest rate of 9.55%. According to SLC's website, studentloan.com, a standard repayment plan is, "where you [the borrower] pay back the same amount every month on a fixed-rate loan for the life of the loan", or in the case of a variable-rate loan, "you [the borrower] pay the same amount every month for the period between potential interest rate changes. When interest rates change, your monthly payment may increase or decrease accordingly."

10.   In exchange for a small interest rate reduction (reflected in the 9.55% interest rate mentioned above), Plaintiff enrolled in the auto-debit payment program offered by Citibank and SLC. Under the auto-debit payment program, Plaintiff's monthly payments for the Consolidated Private Student Loan are automatically deducted from his checking account at or around the same time each month.[1]

11.   In December 2007 or January 2008, Plaintiff began, through the auto-debit program, making monthly payments on the Consolidated Private Student Loan of $845.72 a month. Occasionally, Plaintiff would make additional payments to the principal of the Consolidated Private Student Loan to repay the loan faster and reduce the aggregate paid to fully repay.

12.   As of the filing of this complaint, Plaintiff has made three additional payments to the principal of the Consolidated Private Student Loan totaling $25,000. These payments were each made by check made out to SLC as follows - $5,000 in April 2008, $10,000 in June 2008,

---

[1]    At the time, Plaintiff also had two federal student loan consolidation loans at SLC. These loans have since been sold to Sallie Mae, Inc. ("Sallie Mae").

3

and $10,000 in June 2009. Each of these payments contained the instruction on the memo line of the check, "apply to principal of loan #28 [the Consolidated Private Student Loan]".

13.     After the payments to the principal of the Consolidated Private Student Loan, Plaintiff's monthly payment remained unchanged, and Citibank and SLC continued to auto-debit $845.72 from Plaintiff's checking account each month. The only change that resulted from the payments to principal of the Consolidated Private Student Loan was - due to the reduction in the loan's principal - a greater portion of the monthly payment was applied to the loan's principal and less went toward interest.

14.     Plaintiff has not made a payment in excess of the auto-debited monthly minimum payment since June 2009.

15.     The same monthly payment of $845.72 was auto-debited from Plaintiff's checking account for approximately four years, until January 2012.

16.     In late 2011, Plaintiff received a notice from Citibank that the Consolidated Private Student Loan had been sold to Discover, but Citibank remains the loan's servicer.

### DEFENDANTS' UNILATERAL ALTERATION OF THE CONSOLIDATED PRIVATE STUDENT LOAN'S MONTHLY PAYMENT AND THE INTEREST RATE MISREPRESENTATION

17.     In January 2012, Defendants unilaterally dropped Plaintiff's auto-debited monthly payment from $845.72 to $539.27. Defendants provided the following false explanation in Plaintiff's January 2012 monthly statement from SLC (the "Interest Rate Misrepresentation"):

> **IMPORTANT ACCOUNT INFORMATION**
> **YOUR INTEREST RATE HAS CHANGED**
> The variable interest rate on your student loan has changed. <u>Your monthly payment has been adjusted to reflect the new interest rate, as stated above.</u> If you participate in our E-Z Pay service, your automatic deduction has been changed.

Should you have any questions regarding this change, please call Customer Service.

(underline added).

18.     The Interest Rate Misrepresentation is false, deceptive, and misleading because it masks from borrowers the true reason for the drop in the monthly payment amount – a massive decline in the amount of the loan's principal being repaid each month.

19.     In January 2012, the interest rate for the Consolidated Private Student Loan was only reduced 0.5% from 9.55% to 9.05%. According to Plaintiff's January 2012 statement from SLC, the total current balance of the Consolidated Private Student Loan at that time was $64,791.19. The "new interest rate" does not account for Plaintiff's monthly payment decline of over $300 per month.

20.     As a result of the reduction to the monthly payment, the amount of principal being repaid on the Consolidated Private Student Loan declined from $335.67 in December 2011 to $42.59 in January 2012, namely, a decline of $293.08 per month, while the amount of interest paid remained basically the same declining only from $510.05 in December 2011 to $496.68 in January 2012. This fact was not disclosed by Defendants.

21.     On January 4, 2012, Plaintiff made two calls to SLC customer service to inquire why his monthly payment declined over $300 from December 2011 to January 2012. On both calls Plaintiff had to navigate through a lengthy automated process to get to a customer service representative. The difficulty in contacting a customer service representative at SLC is exemplified by the fact that the first automated list of options does not include the choice of speaking to a live representative.

22.     On both of the calls, Plaintiff received varying and inconsistent answers as to why his monthly payment declined from December 2011 to January 2012 so dramatically, and the representative refused to return Plaintiff's monthly payment to the original amount.

23.     On the second call, Plaintiff requested a written explanation of the monthly payment decline and was told he would receive the explanation by regular U.S. mail and email within five to seven days. Plaintiff did not receive the written explanation for over 15 days and it was only sent by regular U.S. mail. The explanation, which is from Citibank, states, in relevant part:

> Prior to your loan payment amount being adjusted in December 2011, your payment schedule was last changed in January 2008. Between those two adjustments, we received three payments larger than your monthly minimum due totaling approximately $25,000.00. Your payment schedule was then systemically adjusted in December 2011 for the full remaining repayment term with a payment amount based on the reduced principal balance.

24.     This explanation not only reveals the deception of the Interest Rate Misrepresentation, but is also contradicted by SLC's website, studentloan.com, in a section titled "Prepayment Calculator". The Prepayment Calculator provides the following "tip" to student loan borrowers, "[p]repaying your student loan is a smart way to pay it off faster and reduce your loan costs."

25.     For example, according to the "Prepayment Calculator", if a borrower of a student loan with current balance of $100,000, an interest rate of 9.55%, and 25 years left to pay back, made a one-time extra payment of $25,000 to reduce the principal balance of the loan the "results" would be:

> **Here's What Happens When You Pay Down Your Principal**
> By making an extra payment of $25,000 toward your principal balance, you will not only lower your principal balance to $75,000, but also shorten your repayment term to approximately 12 years. Plus, you will save $111,284.89 in interest over the life of the loan. Remember, there no penalties for paying extra at Citi.

26.     The Prepayment Calculator does not state that the borrower's loan will be "systematically adjusted" to continue to bear interest to Defendants for "the full remaining repayment term with a payment amount based on the reduced principal balance."

27.     Moreover, Defendants' deception is exacerbated by their exploitation of the auto-debit payment program. The auto-debit program induces student loan borrowers to not "worry" about their monthly payment because Defendants represent that the prearranged amount will be deducted from the borrowers' bank accounts each month automatically. For example, SLC's website, studentloan.com, provides, "[o]ur auto-debit payment program automatically deducts your student loan payments from your bank account each month so you [the borrower] never have to worry about missing a payment." The deception complained of herein capitalizes on the complacency Defendants knowingly cultivate via the auto-debit program.

28.     Finally, when extra payments are made on a loan, the customary and usual business practice is that the principal balance is reduced but the monthly payment amount remains the same, thus substantially lowering interest costs. Defendants' course of conduct violated this customary and usual business practice.

### SLC FAILS TO GIVE PLAINTIFF A COPY OF THE PROMISSORY NOTE FOR HIS LOAN

29.     In January 2012, Plaintiff made two requests for a copy of the promissory note for the Consolidated Private Student Loan from SLC customer service. In response to these requests, Plaintiff received letters claiming to enclose a copy of the promissory note for the Consolidated Private Student Loan, but which, in fact, only enclosed the application for the Consolidated Private Student Loan.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class, consisting of all borrowers of private student loans owned or serviced by Defendants who made payments to the principal of their loan in excess of their monthly minimum payment and subsequently had their monthly payment reduced from the present back to the earliest period for which the statutes of limitations allow.

31. The Class Members are so numerous that joinder of all Members is impracticable. Although the exact number of Class Members in unknown to Plaintiff at this time and can only by ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of Class Members.

32. Common questions of law and fact exist to all Class Members and predominate over any questions affecting solely individual Members. Among the questions of law and fact common to the Class are:

(a) Whether Defendants breached their contract with Plaintiff and the other Class Members;

(b) Whether Defendants' conduct violated New York General Business Law § 349;

(c) Whether Defendants' conduct violated New York General Business Law § 350; and

(d) Whether the Court should enjoin Defendants from continuing to engage in the conduct complained of herein.

33. Plaintiff's claims are typical of the claims of the Class Members, as Plaintiff and the other Class Members sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

34.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35.  A class action is superior to all other available methods for the fair and efficient adjudication for the controversy since joinder of all Class Members is impracticable.  Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for Class Members to seek redress individually for the wrong done to them.  There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract against all Defendants)

36.  Plaintiff repeats and realleges paragraphs 1 through 35 as if fully set forth herein.

37.  Defendants' contract with Plaintiff and the other Class Members provides that in the case of a "fixed-rate loan" the borrower, "pay[s] back the same amount every month … for the life of the loan", and in the case of a "variable-rate loan" the borrower, "pay[s] the same amount every month for the period between potential interest rate changes. When interest rates change, your monthly payment may increase or decrease accordingly."  Therefore, according to the terms of the contract Defendants may not ever adjust the monthly payment for a "fixed-rate loan" and may only adjust the monthly payment for a "variable-rate loan" to reflect a change in the applicable interest rate.

38.  Defendants breached their contract by, as alleged above, "systemically adjust[ing]" Plaintiff and other the Class Members' monthly payments to extend the repayment term and collect additional interest.

39. As a result of Defendants' breach of contract, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 against all Defendants)

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. Plaintiff and the other Class Members have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

42. Defendants engaged in acts and practices that were deceptive or misleading in a material way, and that injured Plaintiff and the other Class Members. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

43. Defendants' deceptive acts include - as shown by the Interest Rate Misrepresentation - representing on monthly statements that Plaintiff and the other Class Members' monthly payments were reduced because of an interest rate reduction, when in fact, virtually all of the payment reduction is attributable to a reduction in the amount of principal being repaid each month.

44. Plaintiff and the other Class Members have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trail.

45. Plaintiff and the other Class Members also seek to enjoin Defendants' practices that violate section 349 of the GBL.

46. Plaintiff and the other Class Members seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

### THIRD CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 350 against all Defendants)

47. Plaintiff repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48. Plaintiff and the other Class Members have been injured and suffered damages by violations of section 350 of the GBL which states:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

49. Defendants' false, misleading, and deceptive acts or practices were made in connection with advertisements within the scope of section 350-a of the GBL. For example, Defendants' representations made on the "Prepayment Calculator" that payments to the principal will "shorten your repayment term" are false.

50. Plaintiff and the other Class Members were induced to borrow private student loans from Citibank and SLC by the false, misleading, and deceptive representations made on the "Prepayment Calculator".

51. Defendants willfully and knowingly engaged in the conduct described above.

52. Plaintiff and the other Class Members have been damaged by Defendants' violations of section 350 of the GBL, in an amount to be determined at trail.

53. Plaintiff and the other Class Members also seek to enjoin Defendants' practices that violate section 350 of the GBL.

54. Plaintiff and the other Class Members seek treble damages and an award of reasonable attorney's fees pursuant to section 350-e of the GBL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class prays for judgment as follows:

(a) Certifying that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23 and Plaintiff be certified as an adequate representative of the Class;

(b) Awarding Plaintiff and each other Class Member damages for the wrongful acts alleged;

(c) Awarding Plaintiff and each other Class Member treble damages for Defendants' violations of GBL §§ 349 and 350;

(d) Enjoining Defendants from continuing the wrongful acts and practices alleges;

(e) Awarding Plaintiff and the other Class Members the costs of the suit and attorneys' fees;

(f) Awarding Plaintiff and the other Class Members pre and post judgment interest at the maximum legal rate; and

(g) Awarding Plaintiff and the other Class Members such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 25, 2012

                                      RABIN & PECKEL LLP

                                      By: _____
                                          I. Stephen Rabin (IR-5058)
                                      Joseph V. McBride (JM-3550)
                                      317 Madison Avenue
                                      21st Floor
                                      New York, New York 10017
                                      Tel: (212) 880-3722
                                      Fax: (212) 880-3716
                                      srabin@rabinpeckel.com
                                      jmcbride@rabinpeckel.com

                                      *Attorneys for Plaintiff and the Class*