UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JUSTIN A. KUEHN, on behalf of himself  :
and all others similarly situated,     :
                                       :
            Plaintiff,                 :
                                       :          12 Civ. 3287 (DLC)
        -v-                            :
                                       :          OPINION AND ORDER
CITIBANK, N.A., THE SUTDENT LOAN       :
CORPORATION, and DISCOVER BANK,        :
                                       :
            Defendants.                :
                                       :
-------------------------------------- X


Appearances:

For the Plaintiff:

Stephen Rabin
Joseph V. McBride
Rabin & Peckel LLP
885 Third Avenue, 30th Floor
New York, NY10022

For the Defendants:

Joseph E. Strauss
Stroock & Stroock & Lavan LLC
180 Maiden Lane
New York, NY 10038

DENISE COTE, District Judge:

     Defendants Citibank, N.A. ("Citibank"), The Student Loan

Corporation ("SLC"), and Discover Bank ("Discover") move

pursuant to the Federal Arbitration Act to compel plaintiff

Justin A. Kuehn ("Kuehn") to arbitrate his claims for breach of

contract, violation of N.Y. Gen. Bus. L. § 349, and N.Y. Gen.

Bus. L. § 350 against the defendants.  Kuehn argues that the
arbitration agreement contained in his loan agreement is
unconscionable and thus unenforceable.  For the following
reasons, the defendants' motion to compel arbitration is granted
and this action is stayed pending resolution of the arbitration.

BACKGROUND

On November 13, 2007, Kuehn electronically submitted a
Private Consolidation Loan Application with SLC.  In this
application, Kuehn sought to consolidate four private student
loans.  As part of the on-line application process, the
plaintiff was required to view the application itself, a
promissory note and a conditional approval letter.  The
application contained a section entitled "Signatures" directly
above the signature box where the customer was permitted to
electronically sign the application by clicking on a box.  The
"Signatures" section provided as follows:

> I promise to pay Citibank, N.A. or any other holder of
> the accompanying promissory note (the "Note") all sums
> disbursed under the terms of this application (the
> "Loan") plus interest, fees and other charges which
> may become due as provided for by the Note.  The terms
> and conditions of this application, the Note, any
> Conditional Approval Letter and any other disclosures
> collectively constitute the entire agreement between
> you and me.

The plaintiff submitted the loan application on November 13,
2007.  In an approval letter dated December 7, 2007, Citibank
approved the plaintiff's application.  The approval letter

stated that "[t]his approval letter, together with your Application/Promissory Note, constitutes the entire agreement between you and us with respect to your Private Consolidation Loan that you requested."

The parties do not dispute that the promissory note is part of the loan agreement between the parties.  The parties also do not dispute that the promissory note contains an arbitration agreement.  The arbitration agreement contains the following language:

> Agreement to arbitrate:
>
> You and I agree that either you or I may, without the other's consent, require that any Claims between you and me be submitted to mandatory, binding arbitration except for certain matters excluded below.  This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this transaction.
>
> Claims subject to Arbitration include, but are not limited to:
>
> Claims relating to . . . <u>the application, enforceability or interpretation of my Account, including this arbitration provision.</u>

(Emphasis supplied.)  The arbitration agreement defines the word "claim" to mean "any case, controversy, dispute, tort, disagreement lawsuit or claim now or hereafter existing between you and me arising out of or in connection with my loan," and the word "account" to mean "my agreement with you as evidenced

by the loan application and Note along with any and all records
or transactions related thereto."

The original balance of the Consolidated Private Student
Loan was $99,148.19 with an annual interest rate of 9.55%.  The
plaintiff enrolled in an auto-debit payment program offered by
Citibank and SLC.  Pursuant to this program, the plaintiff's
monthly payments under the Consolidated Private Student Loan are
automatically deducted from the plaintiff's checking account
each month.  The plaintiff began making monthly payments on the
Consolidated Private Student Loan of $845.72 in either December
2007 or January 2008.  In addition to his monthly payments, the
plaintiff made three large payments by check to SLC towards the
principal of the Consolidated Private Student Loan.  These
payments, which were made in April 2008, June 2008, and June
2009, totaled $25,000.  Following June 2009, the plaintiff has
not made a payment in excess of the auto-debited monthly minimum
payment.  In late 2011, the plaintiff received a notice from
Citibank that his Consolidated Private Student Loan had been
sold to Discover, but that Citibank would remain the loan's
servicer.

In January of 2012, the defendants reduced the plaintiff's
auto-debited monthly payment from $845.72 to $539.27.  The
plaintiff's January 2012 monthly statement from SLC provided the
following notification: "The variable interest rate on your

4

student loan has changed.  Your monthly payment has been adjusted to reflect the new interest rate, as stated above." On at least two occasions, the plaintiff requested an explanation from SLC of why his auto-debit payments were reduced.  Sometime in January 2012, the plaintiff received a letter from Citibank with the following explanation:

> Prior to your loan payment amount being adjusted in December 2011, your payment schedule was last changed in January 2008.  Between those two adjustments, we received three payments larger than your monthly minimum due totaling approximately $25,000.00.  Your payment schedule was then systematically adjusted in December 2011 for the full remaining repayment term with a payment amount based on the reduced principal balance.

On April 25, 2012, the plaintiff filed a complaint in this court against the defendants.  The complaint asserts claims for breach of contract, and violations of New York General Business Law §§ 349 and 350.  The plaintiff alleges that the defendants are engaged in a scheme to collect additional interest at the expense of borrowers of student loans by deceiving borrowers into believing that their monthly payments have been reduced because of an interest rate reduction, when in fact, the majority of the payment reduction is due to a reduction in the amount of principal being repaid each month.  On August 16, the defendants filed a motion to compel arbitration of the plaintiff's claims and to stay the action pending completion of the arbitration proceedings.  In their motion, the defendants

argue that not only are the plaintiff's substantive claims
subject to the arbitration agreement, but the question of the
arbitration agreement's enforceability is itself subject to
arbitration.

DISCUSSION

Pursuant to Section 2 of the Federal Arbitration Act
("FAA") "a written provision in . . . a contract evidencing a
transaction involving commerce to settle by arbitration a
controversy thereafter arising out of such contract or
transaction . . . shall be valid, irrevocable, and enforceable,
save upon such grounds as exist at law or in equity for the
revocation of any contract." 9 U.S.C. § 2.  The FAA was enacted
to counteract "widespread judicial hostility to arbitration
agreements."  AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740,
1745 (2011).  The Supreme Court and Second Circuit have
repeatedly emphasized that the Act "declares a national policy
favoring arbitration."  See e.g., Nitro-Lift Technologies,
L.L.C. v. Howard, --- S.Ct. ---, 2012 WL 5895686, *2
(2012)(citation omitted); Perry v. Thomas, 482 U.S. 483, 489
(1987); Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir.
2012).  Consistent with this policy, "[a] party to an
arbitration agreement seeking to avoid arbitration generally
bears the burden of showing the agreement to be inapplicable or
invalid."  Harrington v. Atlnatic Sounding Co., Inc., 602 F.3d

113, 124 (2d Cir. 2010); see also Green Tree Fin. Corp.-Ala. V. Randolph, 531 U.S. 79, 91-92 (2000).  Under the FAA, when the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under" the arbitration agreement, it must stay the action and compel arbitration.  9 U.S.C. §§ 3-4; see also Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir. 1993).

In many cases, the threshold question of the enforceability of the arbitration agreement as a whole is resolved by the court and not by an arbitrator.  See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003).  The Supreme Court has recognized, however, that parties can also agree to delegate this "gateway" question to an arbitrator.  Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2777 (2010); cf. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198-99 (2d Cir. 1996).  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Center, West, Inc., 130 S.Ct. at 2777-78.  Thus, when an arbitration agreement contains an antecedent agreement delegating the question of the agreement's enforceability to an arbitrator (the "delegation agreement"), this antecedent

agreement itself is "valid, irrevocable, and enforceable, save
upon such grounds as exist at law or in equity for the
revocation of any contract."  9 U.S.C. § 2; see also Rent-A-
Center, West, Inc., 130 S.Ct. at 2778.  In other words, in light
of a delegation agreement, a party's challenge to the
arbitration agreement on unconscionability grounds is a dispute
that must be resolved by arbitration unless the party opposing
arbitration demonstrates that the delegation agreement itself is
unenforceable.  Rent-A-Center, West, Inc., 130 S.Ct. at 2779.
Accordingly, a party seeking to avoid arbitration on
unconscionability grounds must demonstrate that the delegation
agreement in particular, rather than the arbitration agreement
as a whole, is unconscionable.  Id. at 2779-81.

     The arbitration agreement in this case contains a provision
delegating questions about the enforceability of the arbitration
agreement to an arbitrator.  Because the plaintiff has failed to
demonstrate that the delegation agreement is unconscionable, the
defendants' motion to compel arbitration is granted.

     The arbitration agreement between the parties in this case
provides that "[c]laims relating to . . . to application,
enforceability or interpretation of my Account, including this
arbitration provision" are subject to arbitration.  (Emphasis
supplied.)  This provision plainly delegates resolution of
questions about the arbitration agreement's enforceability to an

arbitrator.  Under the FAA, and as explained by the Supreme
Court in Rent-A-Center, West, Inc., 130 S.Ct. 2772, the Court
must enforce this delegation agreement unless the plaintiff has
shown that the delegation agreement itself is unenforceable.

     The enforceability of the delegation agreement, like the
enforceability of the arbitration agreement as a whole, is
governed by state law.  See e.g., id. at 2780; see also Cap
Gemini Ernst & Young, U.S., L.L.C., 346 F.3d at 365.  The
parties agree that Nevada law is the applicable state law.
Under Nevada law, a contract provision is unconscionable only if
it is both procedurally and substantively unconscionable.
Gonski v. Second Judicial Dist. Court of State ex rel. Washoe,
245 P.3d 1164, 1169 (Nev. 2010).  Procedural unconscionability
exists "when a party has no meaningful opportunity to agree to
the clause terms either because of unequal bargaining power, as
in an adhesion contract, or because the clause and its effects
are not readily ascertainable upon a review of the contract."
Id. (citation omitted).  Substantive unconscionability relates
to a contract provision's one-sidedness or oppressiveness.  Id.
The plaintiff has failed to demonstrate that the delegation
provision contained in the arbitration agreement is
substantively unconscionable.

     Like the plaintiff in Rent-A-Center, West, Inc., Kuehn has
directed his unconscionability arguments at the arbitration

agreement as a whole, rather than the antecedent delegation agreement.  This is problematic for the plaintiff, because, as the Supreme Court has recognized, some unconscionability arguments will be more difficult to sustain with respect to the delegation agreement than they would be with respect to the arbitration agreement as a whole.  Rent-A-Center, West, Inc., 120 S.Ct. at 2780.

The plaintiff argues that the arbitration agreement is substantively unconscionable.[1]  In support of this argument, the plaintiff points out that the arbitration agreement's fee-splitting scheme requires the plaintiff to pay for half of the arbitration costs less the cost of the first day of a hearing. The plaintiff estimates that arbitration of his claims could cost as much as $25,000.  The plaintiff suggests that the cost of arbitration will therefore be prohibitively expensive for him.  Once again, however, the plaintiff's focus on the arbitration agreement as a whole, rather than the delegation agreement, misses the mark.  "[T]he unfairness of the fee-splitting arrangement may be more difficult to establish for the

---

[1] The plaintiff has also argues that the arbitration agreement is procedurally unconscionable.  Because the plaintiff has failed to demonstrate that the delegation agreement is substantively unconscionable, the Court does not reach this issue.  Although it is true that "a strong showing of procedural unconscionability means that less substantive unconscionability [is] required," Nevada law still requires "a showing of both types of unconscionability . . . before an arbitration clause will be invalidated."  Gonski, 245 P.3d at 1169.

10

arbitration of enforceability than for arbitration of more complex and fact-related aspects" of the plaintiff's substantive claims.  Id.  The plaintiff's cost estimates appear to refer to the arbitration of the plaintiff's substantive claims against the defendants.  There is no indication in the plaintiff's submissions that the costs of having an arbitrator decide the question of the arbitration agreement's enforceability will itself be prohibitively expensive due to the fee-splitting scheme.  When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  Green Tree Fin. Corp.-Ala. V. Randolph, 531 U.S. 79, 92 (2000).  In this case, the plaintiff has failed to demonstrate that he is likely to incur prohibitive costs by arbitrating the question of the arbitration agreement's enforceability.[2]

---

[2] The defendants have also volunteered to advance the plaintiff's portion of any arbitration fees for arbitration before the AAA or JAMS.

CONCLUSION

The defendants' August 16 motion to compel arbitration is granted.   This action is stayed pending resolution of the arbitration proceeding.

SO ORDERED

Dated:   New York, New York
         December 6, 2012

                              _____
                                      DENISE COTE
                              United States District Judge